Thank you, Mr. McFedrin, you may proceed. Thank you, Your Honor. I ask for your support. Counsel. The court is dedicated. My name is James McFedrin of the Coulee Associates. Here today on behalf of Mr. Carreon and Mr. Aguilera as representatives of the respective states in connection with these consolidated cases involving this tragic accident. At the outset, let me indicate that it's been acknowledged by everybody that this is a very tragic accident and a horrific accident and a suggestion, even among the briefs of the defendant, that pointing out the status of the parties and things like that, that the goal here is to just try to get sympathy. The goal on behalf of my clients today, though, to make it clear, is for justice, not sympathy. We maintain that the drastic remedy of some of your judgments is not appropriate and that my clients, who are present for the record in open court here today, should be entitled to a jury as indicated in the Constitution subject to the parameters and reference of some of your judgments. We maintain that the record in this case does not support the drastic remedy of some of your judgments. What are some of the facts? The drivers are heading south on Interstate 39. There is a Mr. Flanders who is in an F-150 truck. There is a Mr. Defendant Yankee on a Milan Express vehicle who is in a semi-truck. And then there's a Mr. Land ahead of him in a semi-truck. There are the plaintiffs and the Chief Cherokee. There is an issue down the road, an issue in reference to a hay truck that appears to be on fire and is obviously disabled. And then there are some facts after that that are not disputed. Those facts include the fact that there is some traffic stopped ahead. Those facts include that it was dark. There are other facts that are disputed. Was it a clear night or a foggy night? Several witnesses say it was clear. Mr. Flanders says it was foggy. What was the lighting area and what was the nature of the lighting? Mr. Flanders indicates he only saw brake lights for a split second and then he had no warning. The basis for which we maintain there is a question of fact in this case includes inferences from the evidence, both direct and circumstantial, that there was a sudden stop in the incident case by the Yankee Milan Express vehicle. Sudden stop causing the carry-on vehicle to have to stop suddenly and causing then the Flanders vehicle not to have appropriate warning. In addition to that, we maintain there's a question of fact as to whether there's a breach of the duty of a reasonable care of a truck driver in turning his emergency flashers off. He's at night on a dark road. He had the flashers on. He turns them off by his own admission before the collision. We suggest that raises a question of fact as to the breach of the duty of reasonable care. We maintain that there's a question of fact as to whether each and both of those create our potentially approximate cause of the unfortunate incident wherein the Flanders vehicle collides with the carry-on truck, then explodes and then horrific fire ensues and the tragic death of my client's deceased occurs. Both sides have referenced the number of cases in connection with this situation. We maintain that the case, that every one of these cases turns on the facts and the facts and the, each of them, one of the inferences from those facts. The cases that they rely on centrally include and the trial court relies on. Of course, this court, I talked a bit about the trial court's reasoning in my brief. I suggest that it had error in it. But this court, of course, reviews the matter de novo in any event. So the trial court reasoning can be used to argue on both sides. This court, in any event, renders a decision de novo in reference to a review of a granted summary judgment. Now, in the instant case, cases that not only the trial court but the defense rely upon include that of the Dean case, the Kankakee case. However, substantial distinctions in connection with that case include the fact that their driver drove into a pillar and there's a question of whether it should be lit in an underpass. But there was no testimony from the driver who drove into the pillar. In that case, it's whether a lack of a warning caused any problem. In that case, it was the decedent who couldn't give any guidance. That's distinguishable from the instant fact. In the instant case, we do have Flanders. And while certain parts of his testimony may be refuted by other witnesses, it's not the purpose of the summary judgment motion to ferret through those disputes and to decide which witnesses are to be believed. Flanders testified that it was a foggy night,  and that there were no lights in reference to warning, and that warning was an issue for him. So contrary to the point in the Dean case where there was no indication as to what posed an issue, as to whether the lack of warning posed an issue for the driver, we do have that in this case. And we do have it similar, we have it here. And that's why it's distinguishable, and that's why it gives rise, there are directives. That combined with the circumstantial evidence involving the point that it's a dark evening, that there's no question, but that you're on an interstate where everyone expects traffic to be moving freely, that the lack of a warning can be important. Now they're going to suggest, well, how do you know that even had the flashers been on, the warning would have been heeded? We never know that in a warning case. You always might have a situation where a driver might have thought it's reasonable inference that the warning may have been in the system. He saw a brake light, but only for an instant before. So if there were a warning in reference to flashers, and or if he hadn't done a sudden stop, that either, either or both of those could have provided a better warning for the vehicles coming from behind. Where did we get the sudden stop? The sudden stop comes from several points. Number one, and centrally in reference to the brake lights. Brake lights were seen by the Flanders vehicle, and in connection with the Flanders vehicle seeing the brake lights only... Who's brake lights? The best inference from the evidence, it's not 100% clear as to whether, I believe he saw the brake lights of both, of the truck, the semi-truck, and also potentially of the carry-on vehicle. But in connection with that, he did see, I believe he said he saw clearly the brake lights of the semi-truck. Now if the brake lights are seen, that's an inference that the truck is just coming to a stop. That could have caused the other vehicle to then just come to a sudden stop. And that could have then given a lack of a warning to the Flanders vehicle coming forward. So I believe that that is the inference. And again, he did go back and forth in his deposition as to whether or not he saw brake lights of the semi-truck for a long period of time. But I believe that the deposition suggests that he did see them. And that he only saw them for a split second. How about taillights? You see, forget the brake light part, it's right there, right? You see taillights up in front of him? There is not any indication as to whether or not he saw taillights that I saw in the depositions. And so I didn't see that. But aside from that, if there had been warning flashers, and there's no question that those were turned off. Those were not available. If it's a foggy night, the evidence, and I think even Flanders testified that he didn't have time to hit his brakes. And the state police accident reconstructionist said there was no evidence of braking by his truck, right? That state reconstruction expert should be, I respectfully suggest, ashamed. He didn't even talk to Flanders. OK, but didn't Flanders testify that he didn't have time to hit his brakes? He said he didn't have time because there wasn't warning. That's why that's, that's, that he suggests he didn't have time to hit his brakes. And perhaps, now, we're not absolving him either, as we've indicated. That case is still pending as to him. We're not suggesting that he's not negligent. He, we maintain clearly was. He is a proximate cause, as we maintain the driver of the Milan Express vehicle was also a proximate cause. So we maintain that Flanders, more likely than not, should have seen something ahead. But had there been warnings such as flashers, and had there not been a sudden stop, those would have been two additional impetus to give him better warning, so that even if he was being inattentive, he would have still seen it. And this tragic accident shouldn't have, wouldn't have happened. And when you're dealing with a situation like this, and when you have traffic, stop them in the interstate. Well, with this decedent's car, it came to a stop, didn't it? The suggestion is it was either stopping, or just stopping. Without hitting this semi that you said the evidence suggests may have caused a stop. Well, he was pushed, she was pushed in. They were pushed into the semi. Right. By Flanders. But the evidence is that whatever this semi was doing, the decedent's vehicle was able to come to a stop or so before. That's correct. And then Flanders was pushed into that semi. He was pushed into the semi by the Flanders vehicle. We maintain the decedent's vehicle did operate with the standard of care. We don't disagree that Flanders did not. But we're suggesting you can have more than one cause, as we often do, for an accident. And that while he may have grievously violated his standard of care, we maintain that so did defendant Yankee. And that either and or both of them could have prevented the accident from happening. At least we maintain that the question, there is sufficient evidence in the record that a jury should decide it. And the jury should make the decision as to whether or not turn those warning lights off should have been done. And as to whether or not there was or wasn't the sudden stop. We can argue it here back and forth. I can argue inferences. Counsel's going to get up and argue inferences. I can point to it. If there's brake lights seen, that indicates it just stopped suddenly. Because if they were stopped already, there wouldn't be brake lights to see. But how would the jury in this case decide if there was a stop by the semi? How would they get there? They'd get there by believing that there was only brake lights seen for a short instance because he was just in the process of stopping. And that therefore he stopped suddenly. Combined with the point that the carry-on vehicle had to stop suddenly. Combined with believing maybe some part of Flanders' testimony that if they hadn't stopped suddenly or had there been more of a warning that there wouldn't have been an accident. But I also maintain that even aside from the sudden stop, that a truck driver shouldn't turn off your emergency flashers in this setting whether he's slowing or whether he's stopped on an interstate when you've got vehicles coming behind him. And he admits he did that here. What's his duty when we're dealing with that subject of flashers? I'm both. I maintain two problems. Common law. How much time do we have? Go ahead. Thanks. In reference to that, his duty for common law is to be a reasonable care of the truck driver. The other truck driver here says he had a duty to provide warning to people behind him. And also I think arguably that the DOT regulation that I referenced in my brief could also provide further support for the fact that there was a disabled vehicle beating the other truck ahead and that this isn't a normal traffic stop and that even if he stopped as he says he was, he should have had his flashers on. And Lange said you have to be careful. This is the other truck driver, he said you have to be careful and provide warning to people behind you. And he didn't do it. He knows people are going to be coming. So you have both the duty of ordinary care and by analogy for more method pace, et cetera, and by Lange's testimony to want a reasonably careful truck driver to do it under the same or similar circumstances, and he didn't do it. And also by, in reference to the DOT for an over-the-road truck driver that I maintain it should be interpreted as applying in this case as well. What if your client's car had been pushed into another car instead of a semi? Any difference? Well, I don't think they have the statutory DOT written in the law, but I think the common law duty would be the same. You should have your emergency flashers on if you're parking a regular vehicle. If you are getting... Well, there's no evidence they were parked, right? Pardon? There's no evidence that they were parked. Well, that depends on who you believe. Well, don't you have at least two people, including the truck driver Lange, saying that they were stopped for almost a two-minute interval on the highway? And then also another witness that said they were stopped for a two-minute interval? I think Lange said that. I don't recall that the other... I think some third party, you know... Well, Vickers, I don't think really could see it, so I don't think he could know. So I know Lange said that he was stopped, and I think the defendant said he was stopped for a long period of time. And then we have a question about the Aguilera vehicle, whether it was really stopped or whether it was creeping, right? There is a question about that, yes, and I don't think there's a question as to whether the truck was stopped. Although he says it was, and the other people said it was. But even if he was, I think he should have had his flashers on. You know, if he was, if he stopped for two to five minutes, then obviously the sudden stop issue is a tougher issue. But I think there's enough debate amongst the witnesses that that's not clear enough to grant summary judgment. And in regards to that, it doesn't absolve him in reference to the flashers. The defendant would have to assume that this guy that didn't see the taillights or the brake lights would have seen the flashers. Excuse me? I'm sorry. Then wouldn't he have to speculate that the person who flanders, who obviously didn't see brake lights or taillights, and just plowed in there, you know, full speed ahead would have seen the flashers? I don't think it's speculation, Your Honor, with all due respect, any more than it is in any case. That's the reason you give those kinds of warnings. I mean, there's a chance that he might not see it, sure. Well, isn't that what brake lights are for? Just to warn traffic behind you that you're slowing down? The difference between brake lights and emergency flashers is brake lights may show that somebody may be slowing and or stopped. It doesn't say how much. Emergency flashers show there's a parallel problem. It's a different level of heightened suspicion regarding flashers. And I think that it's reasonable that... And I don't think... I think it's speculation to say he wouldn't have seen it. I think that's where a jury can decide. In all warning cases, you don't know if somebody's going to see the warning. Mr. McFadden, I've let you go a little low. You'll have time on reply. Sorry, I just... No, that's fine. You'll have time on reply. Mr. Britton, you may respond. Thank you, Your Honor. And good afternoon. May it please the court, counsel. Scott Britton for the defendants, Michael Bianchi and Milan Express. Your Honors, one thing I think all of us can agree on. This is one of the more tragic accidents I think anyone could imagine happening on one of the roadways of the city of Illinois. I know that some of the family members are here today. And I think all of us extend our sympathies to these two women who were taken from their families by a terrible act of negligence. And I'm sure that they've dealt with that every day in the last six years that this has gone on. But as Judge Daugherty observed in his opinion, our sympathies, while understandable, do not affect the law and the facts that apply to the case. And for that reason, we believe that the decision must be affirmed. There are, I think, two bases for Judge Daugherty's opinion which, under each and each separately, would enable this court to affirm his ruling, the first being duty and the second, constant cause. So I wanted to take a look at those independently and address some of the arguments that have been made by plaintiff's counsel. The facts really are not in dispute, even with the argument that I think counsel has made that somehow there are inferences that we are arguing. There are no inferences, Your Honor. There are only the facts that all of the witnesses have testified to, which are remarkably consistent, even Mr. Flanders, when you look at it. My client, Mr. Yankee, was taking a load to Missouri from Wisconsin. He was on 39 South near Tomahawk. On the highway, not on a stop-and-go traffic road unless traffic lights are stopped on, when he had stopped, because he saw a long line of cars in front of him. And what the weather conditions were like or whatever Mr. Flanders said he saw, the bottom line was he saw these vehicles as did Mr. Land, who was in front of him. He stops his truck. And by the way, Mr. McEveritt is exactly right. It's probably a good idea, if you're stopping on the highway, to flash your flashers. And that's exactly what Mr. Yankee did. He turned his flashers on. He actually pumped his brakes a couple times, and this is uncontradictory, to let the plaintiff's vehicle, the seating vehicle, know he's coming to a stop. He brings his truck to a stop with no problem with a gap between him and the semi in front of him, Mr. Land. And the plaintiff, he sees in his rearview mirror, comes to a stop, again with a decent interval between the two vehicles. At that point, there is no evidence that he had a sudden stop of any kind by anyone. The only evidence that has been introduced are the independent witnesses, Mr. Vickers, who's behind, who says, I see a long line of cars, something obviously is going on, and everybody stop. There's brake lights, there's flashers, some have them, some don't. But it's clear that these vehicles have stopped in the road for some reason. And he's several hundred feet behind Mr. Flanders' vehicle. Mr. Land, who's in front, says, I see this truck coming up behind me, and I saw him stop. I then saw the vehicle behind him stop, and we sat there for a couple minutes. Mr. Yankie testified in his deposition that he was on a CB and found out that there was a hay truck that was on fire in front of him, and that traffic was going to be moving pretty quickly. He wasn't broken down, he wasn't stopping for an accident that he was involved in. He was stopped in traffic, period. At that point, Mr. Flanders, for reasons I cannot explain, at 60 or 65 miles an hour, hits this plane's vehicle from behind. Now, I think it's important to actually examine what he said in his deposition. He doesn't say he sees brake lights coming on all of a sudden, and that that forced him to try and stop and wasn't able to do so. That's not what he says. What he says was, he was in a fog van. Whether he was or not, I don't think it's relevant to my case, but for whatever reason, his vision was obstructed, and when he came up on the vehicle, he saw brake lights. He doesn't know if they had just come on, he doesn't know if they had been on for minutes or half an hour or an hour. He has no idea. All he knows is the first time he sees them, he's in a position where he can't stop. He also testified specifically on page 313 of the record that he saw the car in front of him have its brake lights on, not Ryan Express's truck. I just want to make sure that's clear on the record. So, the duty that I think the Amadeo case discusses is basically that when you're stopped in traffic, you have no duty to the people behind you. Now, you certainly have a duty to not stop suddenly, but if there's no evidence of any kind that anyone stopped suddenly, the only duty is basically to sit there and not take the car in front of you. The idea that somehow all of these vehicles may have stopped suddenly, because theoretically the decedent's vehicle may have stopped suddenly, seems to imply guilt as to everybody who's in line for about a mile down the road, theoretically. Because why is it that my client theoretically stopped suddenly? Because the plaintiff may have stopped suddenly? Does that Mr. Land then, does he stop suddenly? Does the vehicle in front of him stop suddenly? I have no idea because there's no evidence in the record that any of that happened. In fact, the evidence is directly contrary to that. And it's interesting, Officer Royals, who has obviously no reason to take a side in this particular case, said the only reason this accident happened was because Mr. Flanders didn't yield to the vehicle in front of him and did not say anything about the other vehicles in line. Your Honor, so the first time on appeal, the plaintiffs have argued this federal statute, which is 49 CFR 392.26. I would obviously argue that that was waived as it was first brought up on appeal. But even assuming Your Honor's wish to consider it, it clearly does not apply in this case, and that's why there are no cases, as the plaintiff pointed out in their brief, that interprets it in this circumstance, because nobody brings it up, because it doesn't apply. That statute applies only in situations other than necessary traffic stops. Traffic stops were defined, well, rarely in any decision we were able to define, but luckily the plaintiffs pointed this court to the one case that I think actually discusses this in some detail, and that's the Mack case from the Arkansas Supreme Court, which states specifically that section 392.22 does not apply to circumstances where the stop arises from the exigencies of traffic. And in that case, the truck stops, there's an accident on a bridge, and he doesn't get out and put on his flares and flashers because he wasn't broken down. That's the purpose of the statute. So federal rules and regulations do not apply. Illinois statutory duty would be the next place I think we would look. So you're saying it only applies when that truck is in distress. Disabled, accident, something other than, as the statute clearly says, ordinary traffic stop. I don't see how anything could be more clearly defined than an ordinary traffic stop when you're stopped on the highway because there's something going on in front of you that keeps you from going. I mean, I think the implication around it would be that he had to do the next thing, too, which is turn on his flashers, and then within ten minutes, the statute requires that you get out, put out flares and triangles. Well, is that what we're going to do with every single truck that stops on the road? That we're going to put flares out every time you come to a stop for ten minutes? I mean, you know, it's the Chicagoland area, Your Honors, and people stop because sometimes that happens. But the idea that that safety rule and regulation applies to this case is not supported by a single precedent of any court anywhere in the United States and was specifically determined not to apply in this circumstance by the Arkansas Supreme Court. So you're saying that statute says put on flashers within a short period of time, put the required flares for the class of your vehicle. Exactly. And that's sections A and B of the statute. And in fact, the language as to ordinary traffic stops is identical in sections A and section B. So it's a process by which the truck driver is supposed to deal with something other than stopping in traffic, which is what he did here. The Illinois Vehicle Code 11804A talks about the fact that lights may be used, emergency flashers, may be used on such lights, but they are purely discretionary with the person who's driving the vehicle. In order to impose a liability and a duty, I think which would include an instruction to the jury in this case, that somehow that negligence, you have to have something other than the concept that you can turn them on if you think it's a good idea. And in the Figarelli case, the court specifically observed that it is elementary that one cannot violate a duty which one is not required to exercise. So the fact that it's discretionary means it can't be a duty. Exactly. Judge Gordy specifically observed that in his ruling as to why that particular statute, either under a common law or statutory duty, does not exist in the statute. So there's no such thing as being negligent in exercising your discretion. Correct. Your Honor, the second aspect of this case would be process of cause. It is only speculative that anything that Mr. Yankee did or didn't do had anything to do with this accident. And I think that Judge Gordy tried to point this out specifically by looking at the record and trying to determine what it was or what Mr. Yankee did not do that in some way would have caused or prevented this accident from happening. And I think what the case law says is that it must be reasonably certain that some action taken by Mr. Yankee would have somehow prevented Mr. Flanders from hitting the Aguilera vehicle. The plaintiff's own brief says, if the flashers were on, it may have prevented this accident. That is, I think, a classic definition of a speculative attempt by a jury to figure out that there's some kind of evidence. Why would you have a trial? Let's go back to that earlier quote. Why would you even have a trial? On the question of duty, you have to have, if it's speculative as to the facts, it may be a question of facts for the jury, absolutely. But duty is one for the court. The duty comes from the fact that you can't have a duty on a statute that says may. That, I think, is the problem with the plaintiff's case. Also, there's not a single case in the state of Illinois that establishes a common law duty to turn your flashers on when you stop in traffic. It doesn't exist. If it did, then I think the argument would be certainly different than the one that's presented to the court. So, on that basis, Judge Doherty coined, what is a healing case? For the concept of that, the plaintiff in that case couldn't testify as to what caused the accident because they were deceased. In this case, the plaintiff's deceased cannot testify as to what happened. But the only evidence that exists, even if you believe that somehow an inference can be raised that there was a sudden stop, the only inference is that the plaintiff came to a sudden stop. It's only their brake lights that the defendant Flanders is referring to during the course of his testimony. There's no indication of any kind that Yankee came to a sudden stop. Therefore, how, as a result of an action by Yankee, can there be proximate cause between his actions and the deaths of these two women? All the eyewitnesses are exactly in sync as to what happened. Mr. Yankee's vehicle stops at a reasonable speed. He made sure that the vehicle behind him didn't hit him. It did not hit him. And at that point, there was no question. Now, yeah, I know they didn't hit that truck, the deceased. But maybe they were being extra cautious and very good drivers.  We are talking about Flanders' vehicle. But I think in order to establish liability by the plaintiffs against Yankee, there's still nothing in the record that establishes any likelihood that he stopped suddenly. There is nothing that establishes that under any of the testimony from any of the witnesses, nor from any inference that can be drawn. Because the only inference you can draw is that theoretically, and I don't think the evidence establishes this here, but assuming you take every possible advantage you can give the plaintiffs and say, well, yeah, maybe the Aguilera vehicle stopped suddenly. Why does that mean that the Yankee vehicle did? Because there's no evidence that it did. None. So, I don't think the Aguilera, I'm not arguing the Aguilera vehicle stopped suddenly. It did not. But even assuming it did, it does not create liabilities to Yankee. And again, I think, related to the process of cause as it does to duty, if every one of these vehicles could theoretically have stopped suddenly, and there's as much evidence that everyone in line stopped suddenly as Mr. Yankee did, that every one of these vehicles in line theoretically has some liability for this accident, or at least should go to the jury on that question. And that's clearly not the case with the law. Thank you. Your Honors, I think when we talk about this case in particular, and we look at the horrific nature of the accident, sometimes I think that we get so caught up in discussing the laws and statutes and precedents that I think are important to this Court, and they should be. Perhaps we've lost the perspective, and I can understand why the plaintiffs would do this, as to what really happened here. Everyone in this courtroom who's heard these facts knows exactly what happened. Mr. Flanders, for reasons I cannot explain, was going 60, 65 miles an hour and hit that Jeep Cherokee from behind and killed those two poor women. I don't know why he did that. I don't know why when he saw one of the other witnesses at the hospital and the guy saw him, he laughed. I don't know why he did that. And I also don't know why it seems that by that injustice, which I think was clear, somehow that implicates liability on the part of my client, who did nothing other than stop his truck, as the law requires, complying with every statute that applies to this circumstance, and at the time of the accident did his very best to try and save these two women's lives, that somehow he bears some responsibility for this act. There is no evidence of it, under duty of proximate cause, and for those reasons we believe Judge Dougherty's opinion should be upheld, and the summary judgment is affirmed. Thank you. Thank you, Mr. Bredrin. Mr. McBedrin? Mr. McBedrin, you may reply. Thank you, Your Honor. Counsel? I'm not surprised that counsel acknowledges the horrific nature and that everyone extends their sympathy, but again, that's not what we're here for. We're here for justice, and we stand to the justice demands that my clients have been trialed by the jury and they haven't decided whether the extent of his negligence against the case. The witnesses on all of them, whether there's differences of opinion, whether it's foggy or whether it's not foggy, whether the brake lights were on for a long period of time, whether they were on at all, whether he was stopped for a long period of time, or whether he was stopped and settled. Agents in the deposition plan, this is their own matter, 37 and 38, which are some of the ones I think he was talking about, 15 and 16 as well. Reasons he would have stopped, some reason perhaps he wasn't paying attention enough to what was going on on the belt. And carry on baseball, the point that Aguilar driving wouldn't have the opportunity to see ahead of him as much with that truck right in front of him. So in reference to the state trooper and what his analysis was, again, I respectfully suggest in an accident of this magnitude for him not to talk to two of the major players, the staff. But certainly he didn't render any reconstructionist per se opinions in this case either. Getting on to the emergencies and the flashers. First of all, the issues to warning were raised and I complain that the authority rules on the date are to be in counsel's writing and summary just in motion to specific. Even if it's actually not been raised, the question of the warning was, this is just another authority raised at the federal court level. Not raising a new issue. It's the same issue, just another authority. I think that issue has clearly been preserved. And I think that both the common law and the federal statute should apply. The Moore v. Bessel case talks about not providing a warning to vehicles behind. That was before probably they even had flashers so there they would talk about flares. I think that the DOT regs should apply in that regard. There's nothing in here that says after you're stopped for a while and you get your triangles out that you turn your flashers off. That's not in the regs. Not that I saw. He should have had those flashers on even if he was eventually going to put them on. And he had them on and he turned them off. Why would you turn them off for people coming behind you that could hit you? Not just the one immediately behind you, but others behind you. A reasonably careful truck driver shouldn't do that. He admits he did. It should be for a jury to determine whether that's a breach of duty as Lance said, a reasonably careful driver is warning those coming from behind. Just so we're clear, is there any evidence either the trailer lights or the brake lights on that truck weren't working? There is. I don't think the record speaks to it either way. No, there's no evidence that they weren't working. There's no evidence that they were. Well, I'm just saying if you're here for justice, if you're driving home tonight and you get stopped on a traffic backup and somebody stops behind you and then somebody comes up and rams that car that stops behind you and somebody's hurt, where's the justice in you getting sued? If you stop in traffic because of traffic backup and then somebody stops behind you and then somebody comes flying down the road and drives that car into the back of your car causing injury or death to the car in between, where's the justice in you getting sued? Well, there's the justice in if the driver who's coming from behind says that I couldn't see or was too foggy or something if I didn't put my flashers on. Well, the driver coming from behind just said by the time I saw any brake lights it was too late to hit the brakes. And I don't know if those brake lights just came on or if he didn't know. I mean, the only reasonable inference to hear is he was looking somewhere other than the road and driving blind down the road and just happened to look up. Isn't that the only reasonable inference from this evidence? It's one reasonable inference, it's not the only one. It could be that he wasn't paying as close attention as he should have, but it also could be because those brake lights just went on because the vehicles were just stopping. So that is another reasonable inference and that's the part that's very relevant and pertinent here. It could mean that's why they were just stopping. That's the other reason because if you would stop for two to five minutes you wouldn't see brake lights. And there's no evidence of taillights. So I think that that is, and as I've said before, the flashers are a much better, that's why you have them. That's why they're called emergency warning flashers. They're not, taillights aren't called emergency warning taillights. Flashers are, that's to warn of a peril. But flangers didn't run into the back of that semi. It ran into the back of your client's car. Maybe he wouldn't have run into the back of our client's car if he'd have had a proper warning. In this case we've got an indication that he didn't have a proper warning because he maintains it was buggy, which is different than the other witnesses say. And he also maintains that there wasn't time. He doesn't say he wasn't paying attention. And I know what you're saying, but those are things for juries to decide. And that's what we maintain. Our client should have the jury decide this case and to determine whether or not he was navigating, he was making a sudden stop, or whether he reached into a regional area and also the statutory duty to turn those flashers off when common sense and a reasonably careful truck driver wouldn't do that and may have prevented unfortunate deaths and us being here today. Thank you, Your Honor. Thank you, Mr. McFedrin. Thank you, Mr. Breton, for your arguments in this matter. It will be taken under advisement. A written disposition shall issue. The court will stand in brief recess for panel time. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Music